DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CONDOMINIUM ASSOCIATION OF GOLF VILLAS, II, INC.,**
Appellant,

v.

**FLORIDA INSURANCE GUARANTY ASSOCIATION, INC.,**
as statutory successor to American Capital Assurance Corp.,
Appellee.

No. 4D2024-1059

[April 30, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Brett M. Waronicki, Judge; L.T. Case No. 56-2022-CA-001919-AXXX-HC.

Tracy L. Kramer of Lakin Law Firm LLC, Davie, and Richard N. Asfar of Almazan Law, Tampa, for appellant.

Bretton C. Albrecht and Caryn L. Bellus of Kubicki Draper, P.A., Fort Lauderdale, and Hinda Klein of Conroy Simberg, Hollywood, for appellee.

CONNER, J.

In this insurance dispute involving Florida Insurance Guaranty Association, Inc. ("FIGA"), we must determine the applicable statute of limitations to decide whether the trial court properly granted summary judgment and dismissed the suit as time-barred. The parties do not dispute the material facts. Instead, the parties contend FIGA's entitlement to summary judgment is purely a matter of deciding which law applies. However, appellant Condominium Association of Golf Villas II, Inc. ("Golf Villas") raises multiple arguments for reversal. We affirm the summary judgment entered in FIGA's favor and explain our reasons for agreeing with FIGA on the limited issue of whether sections 95.11(2)(b) and (2)(e) and section 631.57(1)(b), Florida Statutes (2020), control this case.[1]

_____

[1] In addition to rejecting Golf Villas' arguments on the limited issue discussed herein, we reject Golf Villas' arguments regarding: (1) the effect of stay provisions imposed by statutes or court orders; and (2) estoppel.

## *Background*

This case arises from a property damage insurance claim made by Golf Villas under an insurance policy issued by American Capital Assurance Corporation ("Insolvent Insurer"). Golf Villas is a condominium association consisting of fourteen condominium buildings plus a clubhouse and pool cabana building. The roofs of the buildings at Golf Villas were allegedly damaged by Hurricane Irma. Insolvent Insurer began investigating the claim, but before it finalized its claim decision, insolvency proceedings were initiated by the state Department of Financial Services. The parties agree that upon Insolvent Insured's insolvency, FIGA was "activated" to handle Insolvent Insured's covered claims pursuant to section 631.50, Florida Statutes (2020), et seq., the Florida Insurance Guaranty Association Act.

The insolvency court set April 14, 2022, as a final deadline for claims to be filed regarding the policies issued and in effect when the insolvency court exercised jurisdiction over Insolvent Insurer. Additionally, the insolvency court entered a stay as to suits against FIGA ("the FIGA stay"), which expired on February 14, 2022.

On October 13, 2022, Golf Villas sued FIGA for breach of contract and breach of FIGA's statutory duties based on FIGA's refusal to pay Golf Villas' insurance claim. The parties agree suit was filed one month beyond the five-year period after Hurricane Irma stuck Golf Villas (the loss date).

FIGA subsequently moved for summary judgment, arguing Golf Villas' lawsuit was time-barred by the policy's five-year contractual limitation and the five-year statutory time limit in sections 95.11(2)(b) and (2)(e) (applicable to breach of contract actions). FIGA argued sections 95.11(2)(b) and (2)(e) did not conflict with the one-year limit in sections 631.68 and 95.11(5)(d), Florida Statutes (2020), which Golf Villas had claimed applied specifically to actions against FIGA. FIGA argued the purpose of sections 631.68 and 95.11(5)(d) is to shorten the time limit to file suit on FIGA claims as an additional protection against FIGA's financial responsibility to resolve claims against an insolvent insurer. FIGA maintained it was entitled, pursuant to section 631.57(1)(b), Florida Statutes (2020), to rely on all defenses available to Insolvent Insurer, including the statute of limitations.

Golf Villas opposed summary judgment. Golf Villas argued the applicable statute of limitations was the one-year period provided by sections 631.68 and 95.11(5)(d). Golf Villas contended the five-year

limitations period applicable to contract actions did not apply because section 631.57, relied upon by FIGA, did not refer to a limitation period and thus, the five-year limitation period would have applied had Insolvent Insurer not become insolvent.

FIGA replied to Golf Villas' response, noting, among other arguments, the FIGA stay ended on February 14, 2022. Therefore, FIGA argued, Golf Villas had seven months to sue FIGA before the five-year limitation period expired in September 2022.

At the summary judgment hearing, the parties repeated arguments consistent with their written submissions. The trial court's subsequent written order granted FIGA's summary judgment motion. The trial court noted the issue to be resolved was whether Golf Villas' action was time-barred where the parties disagreed over which statute of limitations applied. The trial court rejected Golf Villas' summary judgment arguments and agreed with FIGA's arguments, reasoning:

> [Golf Villas] argues the rules of statutory construction must be used in this matter to find the filing date of the instant action is not violative of the statute of limitations. At first glance, it would appear that Florida Statute § 95.11(2)(b) and § 95.11(5)(d) are in conflict, but they are not. Florida Statute § 631.57 titled "powers and duties of the association [FIGA],["] in part, provides FIGA "[b]e deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, *defenses,* and obligations of the insolvent insurer as if the insurer had not become insolvent." (emphasis added.) The plain meaning of the words are clear, that if [Insolvent Insurer] had a defense, then FIGA could step into their shoes and have the same defenses. "It should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation." *Sharer v. Hotel Corp. of Am.,* 144 So. 2d 813, 817 (Fla. 1962). If the Court were to take the [Golf Villas'] position, then it would render words in Florida Statute §631.57 purposeless. Second, [Golf Villas'] argument would allow others who are past the five-year statute of limitations to pursue cases, regardless of when the date of loss occurred, if their insurance company went insolvent.

After a final summary judgment for FIGA was entered, Golf Villas gave notice of appeal.

3

### *Appellate Analysis*

Golf Villas argues on appeal that because FIGA was sued for breach of <u>statutory duty</u>, in addition to <u>contractual duty</u>, the trial court erred when it applied sections 95.11(2)(b) and (2)(e), Florida Statutes (2020), to grant FIGA's summary judgment motion and dismiss the case for a statute of limitations violation. More specifically, Golf Villas argues the solely applicable statutes of limitation for FIGA's alleged violation of <u>statutory duty</u> are sections 631.68 and 95.11(5)(d),[2] Florida Statutes (2020).

At oral argument, the parties agreed our resolution focuses on whether the trial court applied the correct statutes in determining Golf Villas' suit against FIGA was time-barred. Thus, our review is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (an order granting summary judgment is reviewed de novo); *Fla. Dep't of Revenue v. New Sea Escape Cruises, Ltd.*, 894 So. 2d 954, 957 (Fla. 2005) (matters of statutory interpretation are reviewed de novo); *Rai v. Rai*, 334 So. 3d 359, 361 (Fla. 5th DCA 2022) ("We review de novo whether a statute of limitations bars a claim.").

### *FIGA as a "Statutory Creature" with Statutory Rights and Obligations*

"FIGA is a public, nonprofit corporation created by statute to provide a mechanism for payment of covered claims under certain classes of insurance policies issued by insurers which have become insolvent." *Fla. Ins. Guar. Ass'n, Inc. v. Devon Neighborhood Ass'n, Inc.*, 67 So. 3d 187, 189 (Fla. 2011). Importantly, "'FIGA is strictly a creature of statute.'" *Id.* at 190 (quoting *Fla. Ins. Guar. Ass'n v. All the Way with Bill Vernay, Inc.*, 864 So. 2d 1126, 1129 (Fla. 2d DCA 2003)). Thus, "'the statutory language defines the extent of FIGA's obligations. FIGA is not responsible for claims against an insurer that do not fall within FIGA's statutory obligations.'" *Devon*, 67 So. 3d at 190 (quoting *Fla. Ins. Guar. Ass'n v. Petty*, 44 So. 3d 1191, 1194 (Fla. 2d DCA 2010)). "[B]ecause the FIGA Act exists as a matter of legislative grace, [] claims against FIGA are *statutory* claims based upon its alleged failure to meet its obligations under the FIGA Act[.]" *de la Fuente*, 202 So. 3d at 404 (emphasis in original) (citation omitted).

---

[2] Section 95.11(5)(d) was renumbered to section 95.11(6)(d) in 2024. Ch. 2024-183, § 1, Laws of Fla. For this opinion, we continue to cite to the statute in effect at the time of the proceedings. *See de la Fuente v. Fla. Ins. Guar. Ass'n*, 202 So. 3d 396, 405 (Fla. 2016) (holding version of FIGA Act in effect on date of insolvency controls).

Once an insurer becomes insolvent, "FIGA becomes obligated to respond to <u>covered claims</u> that arise prior to adjudication of the insurer's insolvency and within a specified period after insolvency." *Devon*, 67 So. 3d at 189 (emphasis added) (citing *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442 (Fla. 2005)).

Section 631.54(4), Florida Statutes (2020), defines a "covered claim" as:

> an unpaid claim . . . which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state.

Section 631.57, Florida Statutes (2020), outlines FIGA's powers and duties. Regarding claims existing prior to adjudication of insolvency, section 631.57(1)(a) provides that FIGA is "obligated to the extent of covered claims" with the caveat that FIGA is not responsible to pay more than $300,000 to $500,000, depending on the type of insurance provided by the policy. § 631.57(1)(a), Fla. Stat. (2020). Pertinent to our analysis, section 631.57(1)(b) provides that FIGA shall "[b]e deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, <u>shall have all rights, duties, defenses, and obligations of the insolvent insurer **as if the insurer had not become insolvent**</u>." § 631.57(1)(b), Fla. Stat. (2020) (emphasis and bold emphasis added).

*The Parties' Statutes of Limitations Arguments*

Golf Villas argues sections 631.68 and 95.11(5)(d) are the solely applicable statutes of limitations controlling its statutory violation claim against FIGA. Section 631.68 provides:

> A covered claim as defined herein with respect to which settlement is not effected and suit is not instituted against the insured of an insolvent insurer or the association <u>within 1 year after the deadline for filing claims</u>, or any extension thereof, with the receiver of the insolvent insurer shall thenceforth be barred as a claim against the association and the insured.

§ 631.68, Fla. Stat. (2020) (emphasis added). In the same vein, section 95.11(5)(d) provides a one-year limitation for "[a]n action against any

guaranty association and its insured, <u>with the period running from the date of the deadline for filing claims in the order of liquidation</u>." § 95.11(5)(d), Fla. Stat. (2020) (emphasis added).

FIGA acknowledges sections 631.68 and 95.11(5)(d), but disagrees those are the only two statutes of limitation applicable to this case. Instead, FIGA argues that sections 95.11(2)(b) and (2)(e), Florida Statutes (2020), control this case's outcome. Sections 95.11(2)(b) and (2)(e) provide:

> (2) WITHIN FIVE YEARS.—
>
> . . . .
>
> (b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument[.]
>
> . . . .
>
> (e) Notwithstanding paragraph (b), an action for breach of a property insurance contract, <u>with the period running from the date of loss</u>.

§ 95.11(2), Fla. Stat. (2020) (emphasis added).

FIGA additionally argues that sections 631.68 and 95.11(5)(d) were enacted to provide additional protections against FIGA's financial liabilities by offering even shorter limitations periods than might apply to parties other than FIGA, such as the five-year statute of limitation in sections 95.11(2)(b) and (2)(e). In other words, based on FIGA's right under section 631.57(1)(b) to assert defenses which the insolvent insurer could have asserted if the insurer had not become insolvent, FIGA not only has the protections of the one-year statutes of limitations argued by Golf Villas, but also the five-year statute of limitations defense which Insolvent Insured could have asserted had it not become insolvent.

*Applicable Caselaw and Statutory Interpretation*

"If a first-party suit is not filed against the insurer before insolvency occurs, the insured is required to file its action against FIGA before the limitation periods in sections 95.11(5)(d) and 631.68 expire." *Morrison v. Homewise Preferred Ins. Co.*, 209 So. 3d 682, 683, (Fla. 5th DCA 2017). In contrast, "the limitations period in section 631.68 is inapplicable to first-party lawsuits pending against the insurer when the insurer is declared insolvent." *Fla. Ins. Guar. Ass'n, Inc. v. Mendoza*, 193 So. 3d 940, 946 (Fla.

6

3d DCA 2016), *accord Morrison*, 209 So. 3d at 685.[3]  In this case, the parties do not dispute that Golf Villas did not sue Insolvent Insurer before the insurer became insolvent.  The parties also do not dispute that Golf Villas sued FIGA within the one-year period for claims to be filed pursuant to the insolvency order.  Thus, arguably, sections 95.11(5)(d) and 631.68 apply to this case.

The question we confront is whether sections 95.11(5)(d) and 631.68 control this case as Golf Villas argues, or sections 95.11(2)(b) and (2)(e) and 631.57(1)(b) control as FIGA argues.

We begin with the principle that courts must look to the text itself when interpreting statutes.  *See, e.g., Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023) ("When we construe statutes, 'our first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used' when the statute was enacted." (quoting *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018))).  Moreover, "[p]rovisions in the texts of statutes and contracts cannot be viewed in isolation from the full textual context of which they are a part." *Allstate Ins. Co. v. Revival Chiropractic, LLC*, 385 So. 3d 107, 113 (Fla. 2024).  Additionally, when interpreting multiple statutory provisions courts "must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another."  *Tsuji*, 366 So. 3d at 1025 (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992)).

As explained by the Third District:

> When a cause of action is ostensibly subject to competing statutes of limitation, three well-entrenched tenets of statutory construction guide our analysis: (1) a specific statute preempts a more general statute; (2) a later statute is given effect over an earlier statute; and (3) if a doubt arises, the longer period of limitations should ordinarily prevail.

*Amer. Auto. Ins. Co. v. FDH Infrastructure Serv., LLC*, 364 So. 3d 1082, 1084 (Fla. 3d DCA 2023) (citations omitted).  Because the third tenet is applied "if a doubt arises," we explore whether a doubt arises after considering the first two tenets.

---

[3] *Morrison* also concluded neither section 631.68 nor section 95.11(5)(d) applies to suits filed before the insurer went insolvent.  209 So. 3d at 685.

7

Sections 631.68 and 95.11(5)(d) both address actions against any guaranty association and its insured. Section 95.11(2)(e) address actions for breach of a property insurance contract. Under a "specific versus general" statute analysis, sections 631.68 and 95.11(5)(d) preempt section 95.11(2)(e), because section 95.11(2)(e) addresses a more general subject. However, under a "later versus earlier" analysis, section 95.11(2)(e) clearly preempts.

Section 631.68 was initially enacted in 1971 and amended in 1977 and 1983. Ch. 71-970, § 19, Laws of Fla.; Ch. 77-227, § 6, Laws of Fla.; Ch. 83-38, § 33, Laws of Fla. Sections 95.11(2)(b) and (5)(d) were initially enacted in 1872 and 1983, respectively. Ch. 1869, § 10, Laws of Fla. (1872); Ch. 83-38, § 34, Laws of Fla. (eff. May 16, 1983). Section 95.11(2)(e) was enacted in 2011. Ch. 11-39, § 1, Laws of Fla. (eff. May 17, 2011). Thus, under the principle that a later statute is given effect over an earlier statute, section 95.11(2)(e) is more controlling than sections 631.68 and 95.11(5)(d).

In the context of suits against FIGA, we determine the more recent pronouncement of legislative intent standard controls over the specific versus general standard because of the duty to harmonize Chapter 631's provisions.

We agree with the Third District that "[s]ection 631.68 must be read in harmony with . . . all other related provisions of Chapter 631, in order that the objectives of each of the chapter's provisions not be sacrificed. We must construe related statutes in harmony with each other." *Mendoza*, 193 So. 3d at 945 (citing *Vill. of Doral Place Ass'n v. RU4 Real, Inc.*, 22 So. 3d 627, 631 (Fla. 3d DCA 2009)). Thus, we agree with the trial court's reasoning in this case:

> The plain meaning of the words are clear, that if [Insolvent Insurer] had a defense, then FIGA could step into their shoes and have the same defenses. "It should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation." *Sharer v. Hotel Corp. of Am.*, 144 So. 2d 813,817 (Fla. 1962). <u>If the Court were to take the Plaintiffs position, then it would render words in Florida Statute §631.57</u> [(allowing FIGA to assert defenses the insolvent insurer could assert if it was not insolvent)] <u>purposeless</u>.

(emphasis added).

8

As we have stated previously:

> The FIGA Act limits the liability of FIGA and bestows upon FIGA all policy defenses as well as any defenses available under common law. § 631.57(1)(b), Fla. Stat. (2008). In no event is FIGA obligated to a policyholder or claimant in an amount in excess of the statutory maximum or <u>in excess of the obligation of the insolvent insurer under the policy from which the claim arises</u>. *Jones v. Fla. Ins. Guar. Ass'n,* 908 So. 2d 435, 453–54 (Fla. 2005) (citing § 631.57, Fla. Stat. (2008)).

*Fla. Ins. Guar. Ass'n v. Smothers,* 65 So. 3d 541, 542–43 (Fla. 4th DCA 2011) (emphasis added).

If we are to honor the clear words of section 631.57(1)(b) that FIGA shall "[b]e deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, <u>shall have all rights, duties, defenses, and obligations of the insolvent insurer</u> **as if the insurer had not become insolvent**," then any statute of limitations defense the insurer could have asserted "<u>as if the insurer had not become insolvent</u>" must be afforded to FIGA. The fact that Golf Villas asserts its action was for breach of FIGA's <u>statutory duties</u>, rather than a straightforward suit for <u>breach of contract</u> does not change the result, because FIGA was statutorily obligated to respond to "covered claims," which section 631.54(4) defines as "an unpaid claim . . . which arises out of, and is within the coverage [of] the applicable limits of an insurance policy to which this part applies[.]" We also agree with FIGA's argument that sections 95.11(5)(d) and 631.68 were intended to provide protections against FIGA's financial liability for claims <u>in addition to</u> other limitation provisions that might apply under section 95.11. Interpreting the statutes as Golf Villas advocates would <u>expand</u> FIGA's financial liability. The plain words of the statutes which we interpret tell us that is not the Legislature's intent.

We conclude the trial court properly applied sections 95.11(2)(b) and (2)(e) and section 631.57(1)(b) in determining Golf Villas' suit against FIGA was time-barred.

### *Conclusion*

Having determined the trial court correctly applied sections 95.11(2)(b) and (2)(e) and section 631.57(1)(b) to the undisputed material facts of this case, and finding no merit in Golf Villas' other arguments on appeal, we affirm the trial court's final summary judgment.

*Affirmed.*

WARNER and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***